United States Court of Appeals for the Fifth Circuit. I think we have seasoned advocates here so you're familiar with the light system. When the yellow light comes on, begin to wrap up and when the red light comes on, hard stop, finish out your sentence. Please remember that rebuttal is for rebuttal only. And so, we will begin with the first case, 17-40165, United States v. Rodriguez-Aparicio. And Ms. Gassman, we'll hear from you first. Good morning. May it please the Court, Kayla Gassman for the appellant, Santiago Rodriguez-Aparicio. The issue before the Court is Mr. Rodriguez's pro se waiver of his right to testify. Waivers of personal constitutional rights, including the right to testify, must be knowing and Mr. Rodriguez's pro se and implicit waiver of the right was not knowing and voluntary. This is an error that requires reversal on appeal. The specific error was the district court's acceptance of Mr. Rodriguez's pro se waiver while being on notice that there was a misunderstanding or confusion about the right to testify. This misunderstanding is shown in at least three places in the record. First, at the pre-trial hearing regarding Mr. Rodriguez's request to represent himself, the district court suggested the possibility that whether a person testified could affect the sentence. And Mr. Rodriguez stated to the Court, quote, I understand that if I testify, I will get two more points. This shows that Mr. Rodriguez believed if he testified, he would automatically be penalized at sentencing. Then during the trial, in both his opening statement and closing argument, Mr. Rodriguez began to provide... What percentage of cases in which a defendant testifies but is ultimately convicted, does the defendant, in fact, get the obstruction of justice penalty, the two points for that? I don't know about the exact percentage. I certainly don't have any kind of statistics. But I think the point is... Pretty high, though. It's very clear that there must be a finding that the defendant lied on this statement. I understand that, but it's a pretty high... I mean, in my experience, looking at hundreds, if not thousands of these sentencing appeals, it's a pretty high percentage. And so you, as a lawyer, would have advised your client of that, right? I understand it's not automatic. Totally agree with that. But you would have had to advise your client of the fact that, you know, you're running that risk. If the judge believes you lied, you're running that risk of the two points. But what's important, I think, about what you just said, Judge Haynes, is that you have to advise the client if the judge finds that you lied, then you're running the risk of getting the two points. But it certainly cannot be an automatic penalty. And the Supreme Court made that very clear in Dunnegan that... No, but he... It wasn't like he was completely off like the person in Ly or L-Y, I don't know how you pronounce that, the case from the Eleventh Circuit. There is a very high possibility, we'll say, that you will get the obstruction of justice points. Not that it's automatic. I completely agree with that. The judge has to make the appropriate findings. But it happens with a great deal of frequency. We'll say that. So he was in the zone of accuracy on that. And he chose to represent himself and chose not to avail himself, apparently, of standby counsel to give him the nuance of that, that it's not automatic but it can happen because, I mean, you get up and say, I wasn't there and you're convicted, the judge will probably conclude you were there. And then the question is, you know, did you knowingly lie and whatever. So I have two important points to make about that. So first, the right to testify is a fundamental personal constitutional right that only the defendant can waive. So counsel cannot waive that on behalf of the defendant. So while a district court doesn't have an obligation to act as counsel for a pro se defendant, I think the district court does retain an obligation to ensure that waiver of personal constitutional rights are knowing and voluntary. So I don't think... So in all cases, then, counseled or otherwise, the judge must ask, do you understand you have a right to testify? Do you understand that if you testify, you won't automatically get two obstruction of justice points? But you might could. Do you understand that if you testify, you're going to be cross-examined? Stuff could come out that otherwise wouldn't come out. You could be impeached with your prior convictions. All of that, the judge is supposed to tell the defendant? It sounds a lot like what a lawyer's supposed to be telling the defendant. No. So the court has made, this court and other courts have made clear that if the defendant is counseled, then the court can presume that silence, from silence, that the waiver of the right to testify was knowing and voluntary because of counsel's independent obligation to have that discussion with the defendant to ensure that the waiver is knowing and voluntary. And that violation then becomes vindicated through an ineffective assistance of counsel claim based on counsel's deficient performance in making those explanations to the defendant. But that simply, it doesn't apply when the defendant is pro se. While it could be advisable for the district court to have that sort of colloquy with the pro se defendant, I don't think it's necessary for the court to go that far to resolve this case where there is a stated specific misunderstanding on the record made directly to the district court by the pro se defendant. I don't think the court, my position is not that the court was required to have a lengthy colloquy about the right to testify. My position is only the court was required to correct the specific misunderstanding that was stated on the record. I think here it would have been enough for the district court to say, well, no, it is not an automatic penalty if you testify. It's possible. But the district court did say, I can't advise you on the law, and had standby counsel sitting there. And actually, as we say here today, we don't know whether or not he asked standby counsel about that. Well, I think we can tell that he had no reason to ask standby counsel about that because he did not know he had any confusion. The defendant thought... We don't know whether standby counsel said, hey, buddy, guess what? You won't automatically get the two points. You might could, but you won't automatically. Well, then this statement did happen at the Ferretti hearing where the district court granted Mr. Rodriguez's request to represent himself and relieved standby counsel of any further obligation to volunteer that explanation to the defendant. And about a month before, defense counsel had put the court on notice that there had been a complete breakdown in communication between client and defense counsel, and the court made very clear when appointing defense counsel that she would have no obligation except to answer specific questions by Mr. Rodriguez. Do we know on this record that she did not tell him, hey, it's not automatic, the two points? It can happen, absolutely, but it's not automatic. It requires, again, that the judge conclude you lie, blah, blah, blah. We don't know on this record, but we do know is that counsel was relieved of any obligation to make that explanation at the Ferretti hearing when the court explained very clearly that she had no further obligations to Mr. Rodriguez except to answer specific questions that he would ask her. And he, on this record, I think it is clear that he would have had no reason to ask her because he thought he understood. It was simply that his understanding was incorrect, that he believed it would be automatic. So I think we can assume there's no reason for him to inquire further of counsel if he thought he understood. He didn't know that he needed any sort of clarification. And I think the other thing that is important to remember is that counsel could not have waived the right for Mr. Rodriguez. I think at the Ferretti hearing, the district court's explanation was sufficient if the defendant continued to have counsel. But where the court allowed Mr. Rodriguez to represent himself, I think then the court retained some obligation. The problem is that you're now setting up something that's contrary to the notion of representing yourself. One of the things that happens at the Ferretti hearing is you say, hey, you don't know the law. You might misunderstand the law. You might look up a rule and not understand there's exceptions to it, or you might whatever. And so you're taking that risk when you decide to represent yourself, and now you're saying, yes, but there's certain categories where the judge nonetheless has to intercede. If he had misunderstood the hearsay rule or if he had misunderstood the authentication requirements, you wouldn't say that the judge has to jump in. And so it seems like you're setting up a situation where, yeah, you're representing yourself, except if you misunderstand certain things, then the judge has to jump in and correct that. Yes, but I think that is entirely consistent with the nature of the right that we're talking about. The difference with regard to hearsay or authentication, those are not personal constitutional rights that can only be waived knowingly and voluntarily by the defendant himself. Counsel can waive all sorts of errors, including constitutional errors, on behalf of a defendant. There's a very short list of rights counsel cannot waive for the defendant. One of those is the right to testify. Others are whether to plead guilty, whether to waive a jury trial, whether to appeal. It's a very, very short list. And I think the Eleventh Circuit's opinion in Lee is very instructive on this point. First, the court notes that implicit in the right to self-representation is the notion that the district court does retain some obligation to ensure that the defendant does not. And where is that implicit? I mean, what Supreme Court case or Fifth Circuit case tells us that? Well, I think this goes all the way back to Johnson v. Zerps from the Supreme Court, where the court explained that constitutional rights can't be nullified by a defendant's ignorant failure to claim them. That doesn't remove the protection of the Constitution. So courts instructed, the Supreme Court instructed lower courts to guard against the ignorant or unknowing waiver of fundamental personal constitutional rights. One of those is the right to testify. And again, my position is not that the district court is required to have a colloquy in every case, but only that the district court is And here, I think it is more than just the statement at the pretrial hearing, because in the opening statement and closing argument, Mr. Rodriguez started to provide facts about himself. It sounded very much like testimony. And yet, despite this, the court didn't even ask him if he wanted to testify, never even mentioned his right to testify at the trial. So given the misunderstanding and the ambiguity about whether he wanted to testify, I think the court was required to at least... But again, you're asking the court essentially to act as his lawyer when he's chosen not to have one. I mean, there has to be meaning to that. And the meaning is, you do give up some rights, including the right to maybe fully understand your rights. And here on this record, we don't even know that he didn't fully understand. I mean, the comment he made was, sounded like he thought it's automatic, but it could have just been a shorthand for the fact that you get the two points. I would say, and this is obviously, I don't have statistics either, but I would say in a majority of the cases where the defendant testifies and is found guilty, probably gets the obstruction of justice charge because his testimony was contrary to the evidence and therefore concluding lie. Now, again, I'm not saying it's automatic. I think the judge has to make a very careful evaluation of that. And I would do the same if I were in that position. But his answer that you're thinking shows in misunderstanding may really just show his shorthand. You know, I'm running that risk. I'm likely to get it, which he may have been told by his lawyer already in the conversation you're saying the lawyer should have. He may have already had that conversation. And this record doesn't tell us he didn't. And you're asking us to reverse on something he has the burden to show us on implications and speculation. How can we do that? The point, the important point is that this is one of those specific constitutional rights where the defendant must make a knowing and voluntary waiver. Here, it is not clear that his waiver was knowing and voluntary. The statement at the pretrial hearing, it's not, perhaps it's not clear what he believed, but it certainly is not clear that he had a correct understanding. And if his decision whether or not to testify was colored by an incorrect understanding, that's not a knowing and voluntary waiver. That paired with his attempts to provide facts that sounded like testimony, did, I think, create an obligation of the district court to at least correct the specific misunderstanding and to at least ask Mr. Rodriguez if he intended to testify. And with regard to giving up counsel, Mr. Rodriguez waived one constitutional right. He waived his right to representation by counsel. He does not thereby waive all other fundamental constitutional rights at trial. He, as I said, there are many rights that counsel can waive on behalf of a defendant. I think it's quite reasonable to say that a pro se defendant can waive those rights by not fully understanding them. But a pro se defendant does not waive personal constitutional rights that are required to be waived only knowingly and voluntarily. You just have a couple of minutes left. Why would you say this case is closer to lie than to Padilla, the 28J case? In Padilla, I think the First Circuit made very clear that there was no specific statement on the record indicating any misunderstanding. And here, I think we do have that. So the difference between Padilla and this case is that the district court was on notice that there was a specific misunderstanding. If the record is simply silent, then that, I think, is Padilla. Did lie have standby counsel or not? I don't believe that he did, just based on how... Judge Barron seemed to emphasize that. Well, I think that why that was important in Padilla was because the defendant was saying the court was required to inform him that he could testify in narrative form. And so it was important in that case that he had standby counsel who could have asked him questions. So the court said there's no reason to assume from silence that the defendant was confused that he couldn't testify because he... The record reflects here that the defendant consulted with standby before saying he didn't have a defense case. I think he consulted specifically about a couple of very specific points regarding specific witnesses or specific documents that he wanted to present. I think that's what the record shows. I did want to briefly talk about why this should be structural error. The Supreme Court made clear in McCaskill and then again last year in Weaver v. Massachusetts that errors that are based in And here, like with the denial of the right to self-representation, which is a structural error, the right to testify is rooted in due process right to be heard and Sixth Amendment right of the defendant to personally conduct his own defense, which are interests that really are independent from the outcome of the trial. You don't think whether he testifies or not has anything to do with the outcome? Then why would it... I think it can have something to do with the outcome, but it also protects interests, protects the defendant's interest to personally conduct his own defense and to personally make his own choices about how to protect his own liberty. And the Supreme Court has said in McCaskill and again last year in Weaver v. Massachusetts that those are the sorts of interests that warrant a structural error standard. I have reserved time for rebuttal. Okay, thank you. All right. Ms. Cullery, we'll hear from you. May it please the Court, Anna Cullery on behalf of the United States. This Court should affirm the judgment of the jury here because the defendant waived his right to testify at trial. Picking up where we left off, the differences in this case between Padilla and Lye. In Lye, the defendant did not have counsel from the very beginning. He never had counsel. He never had counsel or standby counsel from the moment of arraignment through sentencing. So I think that that is very different than what we have here where a defendant did have counsel. He was arrested in 2015. The trial occurred in 2017. He had counsel up through a month short of the trial. And then at trial, that counsel was appointed as standby counsel. We know from comments on the second day of trial that the defendant did consult with standby counsel. And then we also know at sentencing, the same standby counsel was still with the defendant and there was consultation there. In fact, we know that the defendant reviewed the PSR with counsel. So there was still interaction with the defendant and standby counsel. Okay. So let's ask how, what difference that makes. Let's assume arguendo that he needs to be advised of this right to testify and that it doesn't automatically give him the two points in all of that. Is your point, the point I was trying to make earlier, that this record doesn't show us he wasn't properly informed? I mean, in other words, is it his duty here to get a reversal to show us that, no, I never discussed it with counsel and I didn't know? I think it's kind of two points and they're being conflated here. I don't believe that the defendant is saying he didn't know he had the right to testify. I think he's saying that based on lie, where he knew he had the right to testify but was prohibited due to his misunderstanding or statements from the court, that he was prevented from exercising that right. And here, we know that the defendant knew he had the right to testify. He had that conversation with the district court when he said, if I testify, I get the two points. The district court properly responded, I can't give you legal advice. You need to consult with your attorney. And at that point, he was represented by attorney. Attorney was not standby counsel at that point. It was a perfect response to the question. So you're saying that puts him on notice that maybe the two points isn't automatic by the judge going, wait a minute, you're getting into something I can't tell you. The judge did not confirm that misapprehension. And if you look at, I think it's 296 and 297, the district court actually told the defendant twice, this is something that you need to discuss with your attorney. And that was perfectly within line of the responsibilities of the district court and counsel and the defendant. These are legal questions. For example, I think it's analogous to when a defendant pleads guilty. There's a warning in there, and the judge tells him, I don't know what your sentencing is going to be. We need to discuss. PSR has to come back. We make objections. We figure that out at sentencing. I think that is similar to what we have here. He was questioning a sentencing issue. And the appropriate response by the court was to, you need to consult with your attorney if you have one. Well, and the interesting thing is, and I just thought of this, I mean, it's the same judge that would find the obstruction of justice enhancement potentially. And so that judge speculating about how the judge himself might rule seems really inappropriate. Because you can't say, well, no way would you get the two points. You might get the two points. And as I said, I think it's at least enough of a likelihood that you should definitely advise your client about that, about that risk. It's not an absolute, but it's also not completely ridiculous to anticipate you might get it. And so for the judge to start getting in the middle of that nuance, well, you might get two points. If I conclude you lie, I might conclude you lie. I mean, the judge is predicting his, I don't remember if it's a male or female judge, his or her own conduct. It was Judge Hinojosa. And yes, he was sort of predicting and speculating on it. Because we don't know if the defendant was going to justify that point. Remember, this was a hearing that occurred a month or two prior to the trial. And we also don't know the content of the testimony. So not only, it was speculative for a number of reasons. And I think the other interesting thing about this is... No, but what I'm saying is her argument is, hard stop, you hear something like that as a judge, you've got to correct it. So then I'm saying, all right, what's the correction? And the problem is then the judge is sort of wading into a muck in which the judge is kind of predicting his own conduct. Absolutely, Your Honor. And I think that the appropriate response was, you need to discuss with your attorney. Because that was really the only response he could give without getting, as you said, too far into the muck here. Two questions, sort of forward, backwards. What's the rule of law that you're urging? Are you saying that any confusion, a district judge doesn't have the obligation, it's only if the district judge affirmatively misadvises? Or is the rule of law looking for, there could be some confusions that would be exceptional enough that a district judge would have to intercede? And then the backwards question is, do you disavow lie to the point you're asking us to say it's incorrect or you just think it's distinguishable? And those two questions may come together. I think they do come together. I'll start with the second one first, if I may. No, I don't disavow lie. In lie, it was very clear, and I think the other distinguishing feature about lie is that this conversation occurred at trial. I think in this case, we have this discussion about the two points at a pre-trial hearing. So we still have time before we get to trial. We still don't know if the defendant's going to exercise his right or not. This is a discussion as he's weighing everything prior to trial. And lie, this discussion came up at trial. And the conversation that the court had with the defendant, who did not even have standby counsel, essentially precluded him from testifying. It was very clear that the defendant thought the only way he could testify was if he had counsel. The district court didn't change or correct that misapprehension there. Here, when the district court advised the defendant pre-trial that he could testify, he gave him a manner with which he could testify. He said, you can ask yourself questions if you're on the stand. Question, answer, and that's how you can testify. That was available to the defendant the entire time, whether or not he had counsel or not. The difference in lie is the misapprehension that the defendant was under required the use of an attorney. And that prevented him from testifying. There was no way to get around that. There was no manner with which he could testify without the judge clarifying that, no, you could either ask yourself questions or you could just testify in narrative four. So factually, I think those are two very distinct things that we have here that distinguishes our case from lie. And the, what was the other question? The question related was, what's the rule going forward in the Fifth Circuit given our precedent about duty to clarify or no duty to clarify? Is it the government's position that the district court never has to do more than, you ought to get a lawyer, I'm appointing standby, I can't give you legal advice. And therefore, the district court has no obligation to correct as long as it doesn't misadvise? Or are there exceptional circumstances like lie where you would say it would be not knowing waiver if the misunderstanding were too acute? I think that there could be exceptional circumstances as in lie where the judge could step in to clarify. In lie, it resulted in the inability of the defendant to testify no matter how much he wanted. So regardless of how much he understood that right, without counsel, he could not testify. And I think that in that circumstance where it comes, where there's a competing interest of being able to represent yourself and being able to testify, there was absolutely no way that he could do it based on his understanding of what the law was. And that was a clearly erroneous misunderstanding of how the law worked and how he could exercise that right. We don't have that issue here. Even if you accept that the defendant was confused in any way about the two points, the district court clearly gave him a manner in which he could testify. And he could testify, and if he won, there's no two points. And if he loses, then it's two points rather than totally not being able to testify. At least if we assume arguendo, he really thought that the two points were automatic. Yes, Your Honor, and I think going back to Lye, the other distinguishing feature here is that's more of a manner and means of testimony. How do you actually go about testifying? And in Lye, there was no way for him to testify. It really had nothing to do with content. Here, that was open to the defendant. The judge clearly told him, you can testify. This is how you do it. Whether or not he exercised that right was up to him. I think the claim raised is that he was confused as to what would happen if he testified, and that's more of a content argument. But maybe he wasn't. Maybe he talked to his lawyer and told him he planned to lie, and he said, well, what's going to happen is you're going to get two points for obstruction of justice if you lie, okay? And we don't know that that conversation didn't happen, do we? And then he'd be right about the two points. Gets up and lies, he ought to get the two points, right? Or I'd agree on that. Yes, Your Honor, we don't know the content of the conversation. I think that we can somewhat speculate that they did have this conversation because the defendant didn't know that there was a possibility of two points for obstruction of justice if he lied. He had to get that information from somewhere. He could have gotten it on his own, but we know that he was represented for two years prior to this. And so, again, I'm back to, like, whose burden is it to negate the idea that he was properly informed, that he got the two points from talking to his lawyer and what he came away from that is, you know, I'm planning to get up and lie under oath and I'm going to get two points for obstruction of justice and so what he said to the judge really doesn't represent a misapprehension. It's actually correct. Yes, Your Honor, and I believe it is the defendant's burden here to show that. And that is the basis of the law that we have in terms of the judge isn't required to ask the defendant explicitly whether or not he's waiving this right. This is something personal to the defendant. The attorney is typically responsible for having this conversation with the defendant and absent any sort of statements or claims later raised, for example, in an effective assistance of counsel claim, the judge has no duty to inquire further. But I guess what I'm saying is we don't know as we sit here today in this courtroom whether he had that conversation or not, but he knows. And so it just seems to me this isn't something where we're putting a burden on him he couldn't meet. He knows whether he had this conversation with his lawyer and where did he find out about the two points and how did that come up and what was he told and all of that. He knows that and yet we're being asked to reverse in ignorance. Really. Yes, and I think that's where we have the issue of whether or not you go to the district court and you find out what was said what was represented to the defense counsel by defense counsel to the defendant and the judge makes a finding there. Here when a defendant proceeds pro se they don't have the benefit of that claim and that is one of the things that FREDA is there to why we have the hearings prior to the defendant waiving his right to counsel because there's an acknowledgment that when you proceed pro se you do give up some rights, you do give up some arguments and one of them is an effective assistance of counsel because you represent yourself. Well, I'm not going to prejudge what an IAC claim in this case would look like on the pre-taking his own representation context like if he was misinformed about things before he gave up the right to counsel I'm not going to get into that because that's another chapter we're not to yet, but let me just ask you this I've made a really big deal with your opposing counsel about this notion that the two points is not a completely ridiculous concept it's not automatic, we thought it was automatic that is incorrect. Does that matter? Did that whole interchange even matter to the outcome of this case? No, I don't believe so. Okay, so I've just wasted everybody's time. It's alright, it wouldn't be the first time I'm sure. I think one of the other things too is just to point us back to the First Circuit case that recently came out in Padilla their counsel did have stand-by counsel the whole time and that was important to the First Circuit's determination here that yes, it was somewhat different in that there were no statements about testifying at trial in that case but one of the things that the First Circuit relied on and I think was important to them was the fact that the defendant did have stand-by counsel throughout the whole proceeding and that is something similar to what we have here. The First Circuit avoided the two much more difficult questions of plain error and harmlessness too. Absolutely, and I think that that's irrelevant here because there was no error and so we don't need to go under any standard of review it doesn't matter because there was no error here. Unless there are any further questions I'll rest on my brief. Thank you. I just want to make a couple of points so I understand the court is concerned with what the correction should have been and is concerned that or understanding that he had stand-by counsel and he had counsel prior to the Feretta hearing but I think the important point to keep in mind  and the stand-by counsel and the stand-by counsel is that the violation here was the unknowing and involuntary waiver of the right to testify at trial. There's no violation of that right until trial and at the point of the violation Mr. Rodriguez did not have counsel and it was incumbent upon the district court to ensure that the waiver of the right at trial was knowing and voluntary and the error that I'm alleging here is that the district court accepted that waiver while being on notice that the defendant did not make the waiver knowingly and voluntarily. I'm not my position is not that the district court was required to engage in an extensive colloquy but merely that the court was required to correct the specific misunderstanding. Let's play that out. So the judge says no there's no automatic two points if you testify. You would say that's a correct correction. Okay now he gets up and testifies you know the light was red when everybody shows it was green there's a video of it green whatever I know that's not what this case is but I'm just to make a hypo. And the judge the jury finds him guilty the judge laughs at two points and he goes wait a minute you told me I wasn't going to get two points I misunderstood. He goes well I said it wasn't automatic well you didn't explain that I might get it if I got up in line. So that's the problem with the judge being the lawyer. I think what the judge could easily have done and what I anticipate a judge would do is to make that correction it's not an automatic penalty if you testify but if you lie or other things that you say on the stand can affect the sentence that's something you have standby counsel here if you would like to discuss that with standby counsel I'll give you an opportunity to do that. I think that would have been more than sufficient. What was not sufficient was the district court doing nothing with regards to this specific constitutional right where the court does have an obligation to ensure that with the waiver of it is knowing involuntary. That's not the sort of right that the defendant automatically gives up by giving up the right to counsel. I also wanted to respond to the point I think it's it cannot be the case that simply being told that there is a manner to testify  a knowing involuntary waiver of the right to testify. The point is that the defendant made that decision while his understanding was colored by an incorrect understanding of the penalty that would result. So the defendant is making it's not enough to know the logistics of testifying. He has to make the waiver of the right while understanding that it can't have a penalty it's sentencing automatically. For example I think other misunderstandings could be things like if the defendant says oh you know what judge I think I have to testify otherwise this jury is going to hold it against me. I think the judge would then be required to say well the jury is going to be instructed that they can't make any sort of inference against you if you don't testify. So whatever misunderstanding is stated the district court has I think a very specific somewhat I think limited obligation to correct that understanding misunderstanding before the defendant makes the waiver of the right to testify. Particularly here where the court did not even mention testifying at the trial. The court didn't even ask Mr. Rodriguez if he wanted to testify and yet Mr. Rodriguez had made multiple attempts to provide what sounded like testimony and it was not clear that he even understood that his opportunity to testify had passed. So if we found this not to be structural error and we applied the plain error how did this affect his substantial rights directly? I mean what would he have said that would have made a difference to the outcome of the case? Let's put it that way. I don't think we can expect the record to reflect what a pro se defendant would have testified to when he made the waiver of the right unknowingly and involuntarily. The record I agree doesn't specify precisely what he would have testified to because there's really no way that the record would be able to reflect that where he waived the right and did not have the opportunity to testify. He had started to provide very briefly facts about himself and his status and his opening statement and his closing argument but he was very quickly cut off because appropriately those are not the times for him to provide that sort of information but since he did not have the opportunity to testify the record really does not reflect beyond that what he would have testified about. That's part I think of my position why this should be a other than simply what he would have testified to and how that would have affected the outcome. It protects his interest in his, his fundamental interest in deciding how best to protect his own liberty which is a right he had already exercised by deciding to represent himself. Okay. Thank you. We appreciate y'all's arguments and the case is under submission.